at all. Argument not to exceed 50 minutes per side. Mr. Quigg, Ms. Montague, Mr. Swarr, Mr. Matteo, and Mr. Rissick, you may proceed for the appellate. Good morning, and may it please the court. My name is Charles Quigg, counsel for appellate, former Michigan Governor Rick Snyder. I've been allocated 30 minutes and asked to reserve 10 minutes for rebuttal. It's foreign book law that courts must liberally construe the Fifth Amendment privilege against self-incrimination in favor of witnesses and to indulge every reasonable presumption that a witness has not waived his right to silence. To be sure, case law also recognizes that a witness, especially a party, can't use the Fifth Amendment as both a sword and a shield to shade the truth. So courts sensibly don't allow a party to waive the privilege, to make her case at trial, and then resist all cross-examination about the story she herself decided to tell. Or to submit a one-sided affidavit and refuse to answer any questions about it. The circumstances here could not be more different. Most important, the gamesmanship that typically justifies a waiver doesn't exist here. Two years ago, Governor Snyder was summoned to a deposition. The parties, not Governor Snyder, decided the questions to ask. Governor Snyder could have asserted his Fifth Amendment privilege at that time, and he did not, and he answered all the questions. He could have, potentially, as to certain questions, Judge Moore, but that gets to the second point that I was just on the verge of making, which is, at the time of his deposition, there was a theoretical risk of prosecution for some unknown crime. In the two years since he was deposed, that theoretical risk has ripened into an indictment on specific, breathtakingly broad charges. That indictment creates new concrete grounds for apprehension, and makes it very clear that any question he conceivably could be asked today overlaps with his pending criminal charges. At the time of his deposition, did he know that there had been indictments of other public officials, some of whom are here today? He did, Judge Moore, but I actually think that that fact cuts in our favor, because there had been a multi-year investigation of the Flint water crisis, a number of other public officials had been indicted, and he had not. So, if anything, that suggests that the risk of prosecution at the time of his deposition was relatively lower. Now we know the risk is 100% because he's been indicted. Now, the deposition that he gave, was it a discovery deposition? Yes, Your Honor. Was it for all the cases? I know that the one case has been tried, the jury is out right now, but there are two other trials that are backed up, that are scheduled after this trial is over, is that right? Yes, Your Honor. Okay, but the deposition, the discovery deposition in this case, was it taken in all the cases, or just the case that was tried? So, the process that has been set up in this very complicated litigation, is that both state and federal cases were consolidated or coordinated before the district court. So, as part of that case management process, all of the cases went through a consolidated discovery process. And there was to be only one deposition of each person, right? For all the cases. For all the cases. Yes. Because one of the issues we have to consider is whether the cases moot, because the government defendants invoked their Fifth Amendment privilege at trial and have refused to testify, and the trial is over. And the issue is whether that moots the case. What's your position on mootness? Our position, which I think, I won't speak for the appellees, but I think everyone agrees that the case is not moot, because the issues presented in this case are virtually certain to recur. What are you appealing? What's in front of us? We're appealing the district court's denial of our motion to quash. And the motion to quash is now expired, right? By the end of the trial. The trial's over. Yes. Motion to quash expired. Were you held in contempt? He was not held in contempt. You could have appealed a contempt order, but that didn't happen, right? That didn't happen. In fact, that's why the district court certified the denial of the motion to quash to avoid that circumstance. And as Judge Griffin just pointed out, there's a second trial. Yes. And you can, presumably they're going to subpoena you in the second trial. That's correct, Your Honor. Okay. Assuming they do, you can immediately move to quash. We could do so. And if the district court denies it, you could take an emergency appeal. Correct. Interlocutory, albeit. We actually did that in this case. Right. That's why we're still debating the question. Yeah. Did the court move to stay in the district court? We did not. In the end, it was unnecessary. Did the defendants move to stay? No. So no one moved to stay. Have you read Empower Texas, the Fifth Circuit case that cites all the circuits on this issue? On mootness? Yes. I can't say that I have, at least not recently, Judge. Then I won't ask you about it. Go ahead. I'm sorry. So on the question of mootness, our position is that this issue is capable of repetition yet evading review. That's an exception to the mootness doctrine. Here, the engineering firm, I think in their 28-page letter, made it clear that they intend to subpoena the government defendants again and to insist that they testify at the subsequent trials. If I can just interject one thing. The deposition that was taken of your client is the very same deposition that will be used in all of the subsequent civil trials because of the joint discovery requirement. Yes, Your Honor. Okay. The case comes down to what is a proceeding that the Mitchell Supreme Court case says that the invocation of the Fifth Amendment privilege is proceeding specific. The question is whether discovery depositions are a proceeding within the case that's separate from the trial or whether it's the same proceeding. I mean, it's clear that you can have multiple proceedings within a case, but a preliminary examination is a separate proceeding from a trial in a criminal case. The grand jury proceedings are separate from a trial. A sentencing hearing is a separate proceeding. So, I mean, what we have to determine whether discovery depositions are a separate proceeding and tell me why they are. Well, a couple of responses, Judge Griffin. Response number one is I understand why you are putting the question as we have to decide whether a deposition and trial are the same proceeding because that's the way the courts often talk about it. That's the way I view the case. Is that correct or not? Well, if you'll let me complete my answer. You can answer. That's how courts typically phrase the rule. But if you look at what courts are doing, they're using proceeding as shorthand for a testimonial event. And if you look at the cases that have determined that there has been a waiver, they're the types of cases that I mentioned at the beginning of my argument where a witness in a single testimonial event, so think a party at trial, stands up, waives the privilege to make her case, and then on cross refuses to answer any questions. Can I go back to Judge Griffin and see whether you call it a separate proceeding or a testimonial event, is the key in your mind if they are crossed in the deposition and the deposition ends, the testimonial event or proceeding, whatever language you want to use, is over and they can reassert at the next event? Yes. Yes, Your Honor. So under your theory, it doesn't matter whether it's a single proceeding, the deposition, and the trial, the civil trial in the same matter. The key is the testimony was subject to cross-examination at the first event. Yeah, and the language of proceeding can be helpful. I think the court could make a decision in terms of proceeding, but just clarifying that proceeding isn't some magic word that you define based on dictionary definitions. If you look at the purpose, the function of the Fifth Amendment privilege against self-incrimination and how it's fulfilled in the circumstances, recognizing that the presumption is against the waiver, I think that's how you started out your argument, which I think was very good, and also that the amendment must be construed liberally in favor of the privilege. So I think the rule of construction is if it's a close call, the privilege prevails. That's exactly right, Judge Griffin. Where do you get the case of saying that there's presumed not to be a waiver? What cases are your best ones for that principle? Well, if you look at this court's decision in Convertino, it provides a very helpful summary. Courts must indulge every reasonable presumption against the waiver of the Fifth Amendment privilege. That's right in our opinion. Which I think goes back. I think this court cited the Supreme Court's decision in EMSPAC for that proposition in Convertino. So what is the purpose of taking a deposition in a civil case? A discovery deposition, and this was for discovery purposes. All these cases were combined for discovery purposes, not for trial purposes. That's right. I think that's significant as well. I'll allow you to answer my question. Thank you, Judge Moore. The purpose of a discovery deposition is to figure out what the facts are. To be sure, it's ahead of a trial, but the purpose of discovery generally is to figure out what's there. And that different purpose highlights yet another reason why the court should consider the deposition event as separate from trial. Because at the deposition, as DNA and Land tell us, their purpose was to figure out what the facts were. At trial, the purpose is quite different. They are quite literally putting Governor Snyder and the other government defendants on trial for the Flint water crisis. Their notice of non-party at fault identified the very same duties at issue in Governor Snyder's indictment as the reason he is at fault in this case. So they want to do the prosecution's job for them at the trial in these cases. Could they ask the same question they asked at the deposition at trial? And what would he do in that circumstance? Would he assert the fifth at that point, even though he's already answered it? Well, for two reasons, Judge Lepar, they can't. For two separate independent reasons. Reason number one is if you accept our position that a waiver is limited to a particular testimonial event, then at trial it doesn't matter what he said before. But even if you follow it, it doesn't matter. But even if you don't accept our position on that particular point, on the facts of this case, even allowing the parties to ask the exact same questions at trial would still pose a risk of further incrimination. And that's because, number one, answers, not questions, incriminate. Could they call him to the stand, he says, I assert the fifth, and they could say, on January 7th we deposed you, right? And we asked this and you answered this. Is that what you read on this piece of paper? The traditional kind of impeachment of a non-answer. Well, in this case, I mean, I can tell the court what actually happened in this trial, which is the court ultimately determined that Governor Snyder was unavailable and ordered the playing of his deposition video. So I would anticipate, if the court agrees with our position, that something similar would happen at the future trials. But just to answer your question a little more fulsomely, Judge Tappar, because it is a good one on the very same questions, even if the court disagrees with our position on the first issue, deposition and trial are separate, even the very same questions at trial would pose a risk of further incrimination for three reasons. Reason number one is identical answers as the Second Circuit recognized in Morante and this court recognized in Morgan Roth. Identical answers at a subsequent proceeding cement the credibility of the earlier answers and make them more difficult to discount at a future criminal trial. And that's because even if the answer is the same, a witness in 2020, if the answer is the same in 2020 and 2022, the witness is testifying that his then present memory is the same. But as we know in our brief, it's unrealistic to think that Governor Snyder's answers at trial in 2022 are going to be identical to his answers at his deposition in 2020. That just cuts against human nature and obviously he's learned new things since his deposition took place. And there is no doubt in my mind, at least, that if there were any differences in answers, V&A and LAM, the athletes, would be arguing that those differences open the door to a further waiver and allow yet more questions that may yield yet more waivers. But doesn't that, your point that the answers at trial may be different than the answers on the deposition show in part why there shouldn't be viewed to be a waiver, why there should be viewed to be a waiver of the Fifth Amendment privilege because the deposition is taken to find out what the position of a particular witness is with respect to a particular question. And the trial, if the answers are different, that shows that there is an effort possibly to manipulate what the facts are from the point of view of that witness. Well, I guess, number one, Judge Moore, I disagree with you that differences, particularly in a case like ours, that differences suggest an attempt to manipulate. It could be an inability to recall two years later or that somebody recalls something because they've read more about it and they know more about it, so maybe the new recall is better than the initial recall. Certainly there are different explanations that could be provided. Right. Yeah, and your question really gets to the third reason why even the same questions would pose a risk of further incrimination on the facts of this case, and that's the risk of a perjury trap. Now, I recognize, we recognize that the generalized risk of perjury or a perjury trap that exists any time a witness testifies under oath at two separate times, that that's not enough to justify an invocation of the Fifth Amendment without more. But here we do have that more. All of the parties, including now Lan, in its closing last week, have accused Governor Snyder of previously lying about what he knew and when and now hiding behind the Fifth Amendment. So we take them at their word. If they think that Governor Snyder lied before and that they, as Lan argued to the jury last week, would have gotten the truth out of him this time if only they had the chance, that by definition is a perjury trap. If he testifies the same that he testified before, he commits perjury in this trial. If he testifies differently, at a minimum, his answers could furnish a link in the chain of evidence against him in a future perjury prosecution. And that's a real, it's a much greater risk under the circumstances of this case, given the background here, which case law tells us the court has to consider. We're dealing with a state prosecution team that has shown that they are going to try to obtain a conviction here by hook or by crook. DNA, in their 28-J letter, pointed out the Michigan Supreme Court's recent opinion in one of the related cases that compared the state prosecution team's mode of indicting these cases to the Star Chamber. And they've already said, despite that indictment of the process that they followed, that they are going to move forward. With new indictments, is that right? No, they're actually attempting to do something even more of a stretch. They're saying that the trial court should simply treat the existing indictments as something different so the existing cases can move forward, despite the Michigan Supreme Court saying that the cases needed to be moved forward. Okay, but the holding that we would be making if we did not accept your position would be just for the civil case, right? For the civil cases. Correct. But the Fifth Amendment applies to both criminal proceedings and civil proceedings, doesn't it? Yes, Judge Griffin, of course, yes. There's no distinction. I see my time is nearly up. Unless the Court has any further questions, I will look forward to speaking with you further on rebuttal. Fine, thank you. Good morning, Your Honors. May it please the Court, I am Sarissa Montague here on behalf of Mr. Baird. I've been allocated five minutes. I would like to save two for rebuttal. I adopt and fully join everything that Attorney Quigg just said on behalf of Governor Snyder. We adopt that for Mr. Baird. Originally, I was just going to come up here and ask if you all had any questions, but there were two points that were raised during the questioning of Mr. Quigg that I would simply like to address quickly. The last point, but the first issue I'm going to address is, Judge Moore, when you were just asking about whether or not, if you're asked the same questions and you give different answers, there was an implication that it could try to be manipulative. But I just want to point out an example, which I actually give a lot of the time to my criminal defense clients. But, you know, I go home tonight and I say to my husband, oh, what did I do today? Oh, today I was before the Sixth Circuit and I was standing next to the table and next to the table. I took my pen and I put my pen on the table. And then they went on and I went to questioning. And if you look in text, there is my pen, it is on the table. But then I go home and I say repeatedly to my neighbor, oh, what did you do today? Today I was before the Sixth Circuit, I was answering questions, I took my pen, I put it on the binder. I'm saying two very truthful statements. My pen is on the binder. My pen is on the table. They are both true, but they are different. And it's not because I'm trying to manipulate. It's simply because it's the same story. They are both truthful and I'm just telling it a little bit differently. But that certainly could make it seem like I was trying to say something differently in the retelling both of the times. So I think that there's a very innocent explanation to why you could say something separately a couple of years later, you know, that that is not manipulative in nature. So that was one point. And then the second point was raised by you, Judge Griffin. You know, you were talking about the presumption being against a waiver and that we should indulge everything in favor of the Fifth Amendment. And, you know, I think that when we are in a beautiful courtroom like this and we're dealing with these really complex and lofty issues, sometimes we lose sight of the fact that we are dealing with regular people living their regular lives. And it's very abstract until it becomes real. And it became very real to our clients at the time that they were indicted by the state of Michigan. I can tell you that at the time that Mr. Baird sat for that deposition, he never knew that within less than a year he was going to be facing four felony charges with, you know, serving a potential sentence of 20 years. He is in his 60s. A 20-year sentence on extortion, if he's convicted as charged, is a lifetime in prison. Maybe he should have known, but the fact is that he didn't. What is clear unequivocally is that at the time of his deposition, he was not a criminal defendant. Could that be a principle that we should apply? Because it would distinguish, arguably, some of the defendants, some of the appellants here from others. It's not. It doesn't actually distinguish the appellants from others because at the time that any of them sat for the deposition, none of them were criminal defendants. But some of them had been indicted. But at that time... And the indictments had been dismissed. The indictments had been dismissed, and my understanding is that the statute of limitations on the charges that they were facing had run. So they are substantively the same. And so I just think that we need to remember that these are real people with real lives, with real consequences. Thank you. Thank you. Mr. Swor. May it please the Court, William Swor on behalf of Gerald Ambrose. Your Honor, quite frankly, my client is in the same position as Governor Snyder. They're similarly situated. They were previously parties deposed at a time when there were no criminal charges pending. Now they are not. There had been an indictment against your client, right, before the deposition. There had been a complaint, Your Honor, that had been dismissed. A criminal complaint. A criminal complaint. The time for proceeding on that criminal complaint had expired, and the statute of limitations had run by the time his deposition was taken. The facts that led to his prosecution now were not known to him. The accusation was not known to him at the time he gave his deposition. He became charged, indicted, six months after his deposition on something that he really did not know was a subject of dispute. Because of the changed circumstances, the right against self-incrimination should be more fulsomely enforced, and we'd ask the court otherwise to adopt the arguments of Mr. Quigg. Is there a case that you rely on particularly for that principle, because you didn't know exactly what you would or could be charged with, that you should have a particular... Well, I think Morante was very close to that. But that's... If you have no other questions... Thank you. Thank you. Good morning to May Police Court. My name is Juan Mateo, and I'm appearing on behalf of Appellant Donnell Early. Like my brother Counsel just did, I also rely on the arguments made on behalf of Governor Snyder by Vice Dean Counsel here, Mr. Quigg. Since you have raised your hand, and I wasn't going to go into any other details, and simply rely on those remarks, but since you have raised this prior charge concern, I can address that if you have any questions with regard to Mr. Early's situation. So Mr. Early had been charged criminally? So Mr. Early had been charged by way of a criminal complaint in December of 2016, and in that complaint he was charged with four counts. One was false pretenses, that he somehow engaged in a series of acts to obtain money in excess of $100,000. That was count one. Count two, conspiracy to commit false pretenses. Count three was misconduct in office, alleging that when they did the switch over from the Detroit water system to drawing water from the Flint River, that the plant wasn't ready, and that somehow was misconduct in office. And the fourth count was willful neglect of duty, a misdemeanor. Shouldn't all of those charges have alerted your client when his civil deposition was sought? That he might, even if those charges had been dismissed, that he might be concerned about any future charges that could have longer statutes of limitations, and that if he wanted to assert his Fifth Amendment privilege, he should assert it in the civil case. There certainly was a risk that we understood in the media, not what we were told as lawyers representing Mr. Early, but in the media that the new Attorney General was conducting an ongoing investigation into the Flint water crisis. We were led to believe otherwise directly from the prosecutors on the case. We had written confidential memos with the prosecutors. We concluded that the statute of limitations as to these charges would have run in March or April of 2020. So although there was technically this risk, and I think that's something that Judge Levy puts a lot of thought into, the reality is if I were to go into a deposition with Mr. Early in July of 2020, what am I going to tell the court I'm raising the Fifth Amendment rights to remain silent on? I'm not aware that there's a criminal investigation pending against Mr. Early. I was not aware that in March of 2020, there had been a judicial inquiry being conducted in secret that had charged him with another offense that we had no idea was under investigation. That's a misconduct in office regarding the violation of the Home Rule Act. We've researched the law since the filing of this indictment. There's no civil tort remedy for violating the Home Rule City Act, and we have not heard of any criminal liability for violating the Home Rule Act. So how am I to advise my client to assert the Fifth Amendment when I'm not aware of any of this going on? I think that's what's really critical here. We are deposed in July of 2020. We're not aware until January of 2021 that, one, this indictment in March of 2020 had been returned by the sitting judge conducting the judicial inquiry, and then there are two separate counts that were filed after Mr. Early was deposed. On September 1st of 2020, that charged him with misconduct in office, two counts of misconduct in office that had to do with press releases that he didn't author, but that someone from the administration offices of Flint had authored that declared that the water hadn't met the Safe Drinking Water Act requirements. Again, there is no law in Michigan that suggests that a public servant can be charged for statements made by someone else out of their administration in a press release. And then they also make the argument in these last two counts that, in fact, he should have switched the Flint River supply back to the city of Detroit when he didn't have the authority to do so. You're getting to the merits of the criminal charges. Right. So my point is when it comes to this concept of waiving at a deposition, how could we waive if we had no idea that we were risking anything at the time he was deposed? And number two, if he had no idea this investigation, these charges were being brought against him. So what case would you rely on to say that you have to be aware of criminal indictments being possible in order to be required to assert your Fifth Amendment privilege at a civil deposition? I think Verratti is a good case, but I really think, as I argued before Judge Levy, this is really the U.S. v. Mitchell case. In Mitchell, if you go into and you plead pursuant to a rule of limited plea agreement and you plead guilty to federal crimes, and then at the sentencing hearing something's changed and you're being asked questions about criminal activity that related to the event but you didn't plead guilty to, if you can assert the Fifth Amendment under those circumstances, I think that's really what we have here. That's what I argued before Judge Levy. The real question, I think, is not whether this is a single proceeding versus multiple proceedings, but the real question is have the circumstances changed so fundamentally that we have been provided a basis to conclude that whatever Mr. Early might say in a deposition or in a trial or under oath anywhere might tend to incriminate him. And again, as I said before, Judge Levy, he's telling the truth. He's always told the truth, and they still use those words against him. We have an absolute right to assert the Fifth Amendment under these circumstances, not only in this trial, but going forward, and we're asking this court to so hold. I have nothing but respect for Judge Levy, but I think she missed the analysis here. Thank you. Thank you. Good morning, and may it please the court. My name is Alexander Rusick, and I have the distinction of representing Howard Croft, the former Director of Public Works for the City of Flint, during the events known as the Flint Water Crisis. I'd like to adopt the arguments of my brother and sister counsel fully, and I'm going to mainly reserve my argument here today for rebuttal, but I do ask the court to continue our long tradition of liberally and broadly construing the protections of the Fifth Amendment and grant those protections to Mr. Croft and the other appellants who now are non-parties and who are currently under indictment and face further indictments, if not continued prosecutions. If the court does not have any questions, I'll defer to my rebuttal. They're non-parties in this case. Did the settlement that made them non-parties in this case, does that apply to the other remaining cases that are part of this consolidation? This is a bellwether trial for the remaining cases? That's correct. So it would apply to the other bellwether cases in federal court as well as the pending litigation in Genesee County Circuit Court that's being coordinated along with the federal cases. Thank you. Thank you. Thank you. It is now time for the other side. Good morning and may it please the court. Minh Nguyen Dang for VMA. Appellants are some of the key government officials who caused the Flint water crisis. They came to their depositions and they testified freely even though there was an ongoing criminal investigation. And then when it came to trial, they refused to come at all. We think the district court very reasonably held that they had to come to trial because there was some waiver, at least to some extent, as a result of their depositions. And so because of that, the district court needed to evaluate their ability to invoke the privilege on a more careful level than the ones they had proposed. And so the court set up a process for doing that. But appellants refused to come at all. And instead they brought this appeal. Now, we think the district court got it right that a blanket invocation in these circumstances wasn't appropriate. And so these issues need to be addressed at the more granular level that it was proposing. And that's really the only issue before the court, is the propriety of the order denying the motion to quash. Why isn't it moved? I saw your letter, but you could have stayed. You could have moved to stay. You could have done any number of things. And presumably the motion to quash has now expired. The subpoenas have expired. You can subpoena them in a second trial, seek a stay, and get immediate review in this court. Your Honor, we didn't want to stay an ongoing trial. The trial had already started. As you point out, yes, this will reappear. You can control your subpoenas. So presumably you could subpoena them for the next trial. And we can. We can subpoena them, and we will subpoena them for the next trial, although it has to be somewhat closer to the time of trial. And we expect that this exact same process will happen again. We'll be in the exact same position. Judge Levy will probably order to make the same decision that she did in this case. And so in, say, a year from now, we will be right here, right back here before this court. But that means it's not evading review. The fact that it can get back here without, at this point, any jeopardy to anyone, means it doesn't evade review.  And we are unlikely to get a decision. Have you read Empower Texas, the one that cites all the circuits? And it says, basically, I'll give you the gist of it, which is if you haven't done everything in your power to prevent it from becoming moot, then it's not evading review. And here, what you could do is you could go back. You could file a declaratory judgment. You could file anything in front of her. You could give notice that you're going to subpoena them and allow them to pre-litigate the quash. And you could seek to stay the trial while the case is reviewed. You could presumably do that tomorrow if the second bellwether process has begun. I haven't looked into that, Your Honor, so I'm not familiar with that case. It is possible that we could, but then we would just be exactly where we are now. I understand that, but mootness is an Article III doctrine, right? So it has a consequence for us. We think the only issue is, as we understand it, is that it has to be capable of repetition, which clearly it is. And, I mean, even if we were to do that right now. But this is the second part. You can't ignore the second part. We're not ignoring the second part, Your Honor. But even if we do that right now, I think this trial has shown that this takes time. This takes time for this court to review. It could be capable of repetition. I guess one point is, after a bellwether, you and I both know you have a few bellwethers. You get a few verdicts. Maybe you have one bellwether, as some of the cases have had in the past, and you have a settlement. Well, Your Honor, there is another trial. The next trial is actually going to be an issue class trial. I'm sorry. The next trial is an issue class trial. It is not a bellwether trial. Your Honor, you're right. It is entirely possible, and we think within the court's discretion, to hold that this case is moot, and therefore to try to wait for the next one. But we are reasonably certain that there will be a next one, and it will be on the same set of facts. Nothing will have changed by the time it happens. Frankly, as you say, it could happen quite quickly. And so from that perspective, if that's the path that the court wishes to go in, then so be it. But we will just tell you now that we will be here again with the same arguments and nothing will have changed. Is there still a possibility of contempt findings by the district judge because of the refusal to testify by the five individuals? And would that give us jurisdiction under the mootness doctrine? We don't think there is any possibility of contempt in this case because rather than going down that route, the judge allowed them to take this interlocutory appeal.  So contempt doctrine is very complicated. There's civil contempt and criminal contempt, and civil contempt has two parts, the part to coerce someone into testifying and the part to award sanctions. Is that not open still at the district court level? Not in this trial, Your Honor. We cannot coerce them to testify in this trial. I know you can't coerce them because the trial is over. That's why I was asking about the damages part. We're not sure that. For damages, wouldn't she already have had to hold them in contempt at the time and then set the damages later? And they can independently appeal contempt findings, correct? Exactly, Your Honor. But she did not do that because of the alternative path of taking this appeal instead. So the damages aspect is not open at all? You cannot seek that? We don't believe so, Your Honor. For the cost of litigating this appeal, for instance? No, Your Honor. We don't think that could be part of it. I was going to ask one more question. You should probably get to the merits because even if this, let's say we find it moved and the second one happens and you take an emergency appeal, presumably we wouldn't need argument again because, as you said, all the issues have been fully litigated. Unless something happens in the interim, we're not aware of it. So you should definitely proceed to the merits either way. Of course. And so I guess I'll start with something that was brought up by the other side, which is this idea of changed circumstances. And I think it's important here to look at them individually. So for three of the defendants, Mr. Cross, Mr. Ambrose, and Mr. Early, as I think was noted, they were previously charged. They had, or at least there had been criminal complaints filed against them. Now, when those charges were dismissed, it was because of the change in administration and the new Solicitor General said that the charges were ongoing. She all but said… Charges or the investigation? The investigation, I'm sorry. The investigation was ongoing and she all but said, you know, don't think that we aren't continuing this. We're actually going to look at more people. It's going to be broader. They knew. And for Mr. Ambrose, Early, and Cross in particular, they moved to quash their depositions in this case entirely because of the risk of criminal charges. They made that motion. And when the district court judge denied that motion, she told them, yes, I'm denying the motion. You have to show up at the deposition. But if you want, you can invoke the privilege as to particular questions. So we don't think there's any question. Did they invoke the privilege? They did not. They didn't even hint at it. I think this is a really hard question, just to be candid with you, and I thought your brief was excellent. But what I'm struggling with is how far does that waiver go? In other words, and I want to think backwards. Like I think we all agree the waiver doesn't extend to a separate criminal proceeding, right? That's pretty clear. And we probably agree, and I think this was the basis of Judge Griffin's initial question way back at the beginning of this, that it doesn't extend to a different civil proceeding. That's an open question, Your Honor. Actually, there's a circuit split on this, and this court in Morgan Roth expressly declined to take a position on that. Okay. I thought the circuit split is just the D.C. circuit on the other side with some loose language. And maybe I'm wrong, and everyone else is on the side of no way. Yes. I mean, I don't know that I put it quite like that. Okay. That's fair. I hope you would say that. So then we get to the trial in the same case, which this is the same case, right? You can answer that same question. And so then it gets to Judge Griffin's second question way back when, which is, is it a separate testimonial event, to use the language of Mr. Kligg, once cross has happened at the deposition? And that's where I'm struggling, is how do I figure that out? Well, Your Honor, I'm not really sure that there's much I can point you to because this testimonial event concept isn't in any of the cases. It's certainly none of the cases have raised it in those trials. Well, what about separate proceedings? How do I figure out what is a separate proceeding for Fifth Amendment purposes? Well, as we point out in the cases in our brief on page 26 and 27, generally speaking, courts have viewed the entirety of a civil case as one proceeding. And so on 27 in particular, we cited cases that had recognized that a deposition and a trial are part of the same proceeding for Fifth Amendment purposes. So this is my last question in this series. So I get that. Here's what I struggle with then. So you depose him and you say, did you shoot J.R.? And he said, yes, I shot J.R. And you get to trial and now no one asked, on what day did you shoot J.R.? And just assume that has criminal significance for whatever reason. Could you ask that question at trial? And could they assert the Fifth? Your Honor, I think that would depend. I think what you're getting at is that this comes down to a question by question, a more granular analysis. So a blanket assertion to Fifth Amendment would not be appropriate. That's what we're saying. But a particularized assertion, depending on the questions that are asked at the civil trial, after the civil deposition in that case, particularized assertions of the Fifth Amendment could be made and be appropriate. Possibly, Your Honor. Yes. That is all the district court held. Now, could they assert it on the same question they answered at the deposition? Because your friends on the other side brought that up. I think it would depend on the question and it would depend on the risk of further incrimination. That is the purpose, after all, of the Fifth Amendment, is to prevent further incrimination. Well, what about their idea that they could get into perjury situations that would be worse if they reiterated the same statement that they made at the deposition? Your Honor, again, it would depend on the question. As this court recognized in Morgan Roth, just a generalized claim of perjury isn't enough. You have to point to something more. Something more they tried to point to is our counsel's argument, which we are civil litigants. We have no control over any perjury charges or anything like that. We make the arguments that we make to the jury. We don't see a single case that has felt that that is the type of something more that could lead to an increased risk of perjury. But I think the key point is all of this needs to be done at the more granular level. And that's pretty much the only thing the district court held. The district court held no blanket waivers. We've got to come to court. We have to figure out the precise scope of what they can and cannot invoke to. And then we have to figure out a process for them to do that at trial. And that's as far as she went. That's as far as the district court went. And appellants refused to even do that. And so if you were picking a couple of cases that would be your best case to support that exact principle that you're stating, what would they be? I think this court has repeatedly said that blanket waivers are inappropriate. And I apologize. I don't have the case names off the top of my head. But I believe it may have even said that in Convertino. And that they are especially disfavored in this circuit. And we just think this is just a very good example of why that is the case. To do it at the level that appellants are suggesting just isn't appropriate here given all of the factual circumstances and given that the ultimate question is further incrimination. And that has to be assessed on an individualized basis. So if there hadn't been the joint discovery here and the limitation to take, as I understand it, to take one deposition of each of these five individuals. That's right. If multiple depositions were allowed and there were multiple cases involving the Flint water plaintiffs, would your position be the same, that Fifth Amendment privilege could not be asserted because one deposition was taken in one of the cases? I think if it was a deposition in the same case and then the trial in that same case, then we would be in favor. Okay, but if you didn't have joint discovery. So this case ends when the jury comes back. And then you have new plaintiffs who will have to take the depositions. That just starts everything fresh. Is that right? Well, we're not sure, Your Honor. We think this gets into the issue that I was discussing with Judge Napar as to whether or not a waiver can extend past a single civil proceeding. We don't think that the court needs to address that in this case. But certainly at that point, I think we would have to look at it at that point. Just to go back to the point I was making about the changed circumstances. So for Mr. Croft early and Ambrose, they knew about the ongoing criminal investigation. It was not, as they suggest, nothing. I'm sorry to interrupt you, but can I read you this language from Morgan Roth which I know you're aware of and then just ask you what we mean by this, meaning our court. So the policy behind the majority rule that the privilege is proceeding specific and not waived in a subsequent proceeding by a waiver in an earlier one. And this is the key language to me. Rests on the thought that during the period between the successive proceedings, conditions might have changed creating new grounds for apprehension, i.e. the passage of a criminal law, that the witness might be subject to different interrogation for different purposes at a subsequent proceeding or that repetition of testimony in an independent proceeding might itself be incriminating. And so isn't that indicating that the proceeding is what I think Mr. Quigg maybe called a testimonial event, which is once you've been subject to cross once and it's complete, the testimonial event is over and the new testimonial event, the new proceeding, could subject you to all these things. I guess that's what I'm trying to figure. This is really for me kind of the critical line I'm trying to figure out and I'm just being very open. I am struggling with it. Yeah, I don't know that it's clear one way or the other.  I think the way I would look at it is this. These are things that might be possible and they might be possible between any two sets of events. And so we think that the key point is that it should be addressed as to those specific events. We think that this idea that there are these blanket rules as a result of one thing, these things might happen as the court indicates. These are possibilities. We don't actually know that they might happen in any particular case. And so I think that just counsels towards, we're not saying that they definitely waive. We don't say that the waiver has to extend to everything. We're just saying that there might be a waiver and so we need to figure it out on a more appropriate level. Those types of things can happen no matter what the circumstances are. And so if we think about the criminal charges here, there was no sense that the investigation was limited in any way. The investigation was about the Flint water crisis in entirety. And so counsel has pointed out that the specific prior charges, that I think one of them may have been the criminal claim alleged was as to only certain events. But there was no indication, there's nothing that should have been indicated to them that that was the entirety of what was being investigated. I mean the other charges that were coming out of the same investigation span the entirety of the crisis. And in particular for Mr. Croft, I would say, his charges relate to conduct that occurred in 2015. And so he should have been aware of that. I believe that the earlier set did as well. And so by the time of his deposition, the statute of limitations as to those charges definitely had not expired. And that's why he moved to quash the depositions, precisely because of the fear of criminal charges. And so the fact that there now have been sort of the exact charges that one would expect from the ongoing investigation at that time, the fact that those actually came in, we don't think that really amounts to a changed circumstance. It's just a realization of the risk that not only was there, but was the risk that three of these appellants expressly acknowledged. And as a result, we think in those circumstances, it's appropriate to consider, I mean, no one disputes that there was a waiver at the depositions for the depositions. And so we think in those circumstances, it's appropriate to consider whether or not that waiver can extend to the civil trial. And that's really all that's before the courts. Another point I wanted to make, and this is something that came up in the briefs, but hasn't really come up today yet, and although, Judge Griffin, you've indicated it, these were discovery depositions. They were not meant to be substitutes for the trial. No one thought at these depositions that that was going to be the case. So they are in discovery. Isn't discovery a separate proceeding from the trial itself? Your Honor, so far we've... I consider it that way, but you don't. We haven't found a single case that has said that, Your Honor. We found the cases that we have found on the subject in the federal courts. I mean, you know, the rules of discovery depositions are much different than a trial, that you're allowed to ask questions that would be subject to hearsay objections and all sorts of things were they asked at trial. I mean, it really is a different animal than a trial, and anything except privilege really has to come out in a discovery deposition. So that's the problem I have, I guess, that I view the function of a discovery deposition to be very different than the function of the trial. And that may be the case, Your Honor, in which case I think just reinforces why it was so important to try to have these appellants at trial. Okay, but it comes down to Mitchell says that the invocation, that the waiver is proceeding specific. It does not carry over to the next proceeding. So if the trial is a different proceeding, and you agree with me, don't you, do you not, that there could be multiple proceedings within a single case? I'm not sure that I do, Your Honor. You don't, okay. Well, at least in the criminal context with the grand jury, preliminary exam, sentencing hearing, proceedings, those are separate from the trial, are they not? Some of those are, yes. They come in front of different fact finders. Well, I mean, the majority of cases hold that they are separate proceedings, and a waiver in one of those proceedings does not apply to a trial. I mean, that's what Mitchell holds. Mitchell holds a sentencing hearing that the, right, right? Yes, but it did that not on the basis of proceeding. It did that in the particular circumstance of a plea, call it plea, versus a sentencing hearing. It did that because of the expectations of the parties. Well, you don't think they made a distinction about proceedings specific? No, I don't believe that's in. I don't believe that's in.  I'm sorry, Your Honor? Hasn't the case law reinforced looking at specific proceedings as to the waiver, how far it extends? Am I wrong about that? Well, the case law has, yes, as we discussed. The case law, there are courts that have said that, you know, they sort of read the inverse of what Mitchell has said. Anyway, I guess your position comes down to, even though I think it's widely acknowledged that there are multiple proceedings within a criminal case, your position is there is only one proceeding in all civil cases. That is. There cannot be multiple proceedings. There's only one proceeding in all civil cases. Well, I would, that is, we think, what, I mean, it's what the Supreme Court has said it means by the word proceeding. It means in either case. Okay, we'll figure that out. That's your position. Is that right? Well, we think that, we think certainly that this deposition and this trial are part of the same proceeding, whether or not. . . Oh, I'm asking the question, okay. Hypothetically or whatever, do you agree that civil cases must have only one proceeding? We think generally that's right, yes. Generally, okay. We think generally that's right. How does that, okay, does that fulfill the function of the Fifth Amendment, which is to be liberally construed in favor of the privilege, and of our, of the rule of construction that presumptions are not to be presumed? I mean, that, I mean, does that. . . As this Court and as other courts have recognized, every invocation of the Fifth Amendment comes at a cost to the fact-finding process, and so while we certainly respect the Fifth Amendment and we certainly. . . Well, it's a pretty important amendment, isn't it? Yes, absolutely. I'm glad you respect it, but. . . We certainly. . . It's one of our most fundamental amendments. Yes. That no, no person shall be compelled to be a witness against himself. I mean, that's. . . That's right. It's the foundation of the Bill of Rights. Absolutely, Your Honor, and so. . . Since it's not really clear whether the waiver should apply under these circumstances, should we not apply the presumption against the waiver in this circumstance since you really don't have any clear law that says that the waiver applies? Well, Your Honor, I think we would dispute that. We think we have cited cases. Well, cases aren't really definitive, I don't think. And then I think that just leads to the next question, which is then what can they or what can't they testify to? I think the only thing really. . . Before you get to that, can you just. . . You were about to say. . . I don't know if you finished. You said the Supreme Court says a civil case in its entirety is one proceeding. No, what I think the Supreme Court has said is that the word proceeding and case are synonymous. They're not. In the criminal context, it's obvious that that's not true. But you're talking about civil cases. I mean, you're distinguishing criminal cases from civil cases. Yes, and although we think in the criminal cases, the types of distinct proceedings that we're talking about, they have very different characteristics. They're before different fact-finders. They have different purposes. My question, I think discovery has a whole different purpose than trial, too. So if we're looking at purposes, I think there's. . . The purposes of asking. . . They're certainly. . . How do I put it? They're part of the same case. They're seeking the truth of the same issues. It's part of the same set we've already had between discovery and the trial. We have the complaint. We know what the issues are. We know what we're trying to get at. The purpose of discovery in the civil case is to get information that will be used as the case proceeds in motions, in trial, and so forth. That's right. But in the types of cases which have held in the criminal context, they're distinguished between sort of investigatory, sort of grand jury proceedings, and then the subsequent criminal proceedings. Why can't you analogize that to discovery, which is very investigatory in kind? I think because it happens at an earlier stage. It's before we even know there's been a crime. It's before we even know what the conflicts are. But that's what a grand jury is, too, isn't it? Isn't a grand jury proceeding before you know there's a crime? Investigate it in front of a grand jury? Yes, that's my point, Your Honor. Whereas in a civil case. . . Okay, so we analogize it to the civil context. Why can't we move over the analogy over here rather than have a blanket rule that there cannot be separate proceedings in a civil case? Well, because we think that in the civil case at that point, we've had the complaint. We know what the issues are. We think that we've moved to that next step. We've moved to the next step of in search of the criminal analogy. We've moved past that, and there's been the charges filed, and we're now in that particular criminal case. And so that's where we think the analogy would be. Before you move to question by question, can you just give me that Supreme Court case that's your best case  Sorry, Your Honor. It was cited in the brief on page . . . If you remember the page, that's fine. I've got the brief right here for the case. Or you can do it. It's on page 23, Your Honor. 23, perfect. That's the home case that was. . . Oh, okay. . . Yep. Okay, thank you. Your distinction between criminal cases and civil cases, I think probably was argued to the Supreme Court decades ago. The argument, I think, was the Fifth Amendment didn't extend to civil cases. The Supreme Court has held that it does. The Fifth Amendment is applicable to criminal and civil cases. And therefore, by making a distinction in the proceedings, I'm not sure it's consistent with the Supreme Court treating civil proceedings as equivalent of criminal proceedings, that's all. Well, certainly we don't dispute that the Fifth Amendment applies in civil proceedings. But you want it to be treated in a different fashion, that's all. We don't know that it is a different fashion, I think is our point. You don't seem to give it as much strength because you want to limit what's a proceeding in a civil case as opposed to a criminal case, and therefore water it down or not give it its full effect, I think. No, Your Honor, we certainly don't mean to do that. I think our point is just that we view discovery deposition and a trial in the same civil case as being much more closely related than the types of distinctions that have been made in the criminal context between different criminal proceedings. That would be our view. And again, I would just remind the Court that all we have here, what we have before the Court, we have no decision about the scope of what they can testify to. All we have is the idea that there can be some waiver and we think that that's reasonably supported by the case law, and so we would ask the Court to affirm on that basis.  I am Sherman VanSweetie, appearing today for Lockwood Andrews & Newnham, Inc., and Leo A. Daley Company, Applebee's, in this case. The question has arisen today regarding the testimonial nature of the deposition and whether it is fundamentally different proceeding from the trial. We believe very clearly that because a deposition creates the possibility to create testimony that is used at trial, it is part of the same testimonial event as the trial itself, and that's no mere possibility in this case. When the trial happens five years later and in the interim they've been indicted, all kinds of things go on. Still, it doesn't matter, right? Well, there's a possibility then that the witness could argue with a series of changed circumstances which would justify a subsequent assertion of the Fifth Amendment that would just depend upon the facts of that particular case. But as far as the two representing the same proceeding, the deposition is certainly available to create testimony in the case, especially if the witness is declared to be unavailable, and in this case the Court actually allowed the deposition testimony of every single one of the appellants here, except I don't believe Mr. Baird's deposition was read. But otherwise, whether they're different animals or not, in Judge Griffin's phrase, that animal has got into our barnyard and is affecting the trial. That testimony that was voluntarily given is before the jury. So then the question becomes whether by opening up themselves to that kind of testimony and voluntarily giving it, whether that creates rights in the other parties, and that's what the courts have consistently said. Would they have had to appear for a second deposition if the court ordered it? Would it matter? It would all be one proceeding, right? Yes, it would matter, I don't believe. So they could, the judge, as long as the case is going on, can continue to make them appear and testify, no matter what? I believe the court has that power. So what do you do with Morgan Roth in the language I read to your co-counsel? Well, I would be remiss if I told you that I understood every statement that's in the Morgan Roth case as many times as I've read it. It's not all completely crystal clear to me. But I believe what Morgan Roth is talking about is what we would call actual separate proceedings, like in a criminal case where there is a delineation, as Judge Griffin has said. I think what Judge Kennedy was saying, right, is that the majority of what they're worried about is in any subsequent place where someone would testify, if these risks exist, that's problematic. And that helped her figure out, or at least get towards what a separate proceeding was, which is would it expose them to new danger? Well, yes, that may be as far as the defendant's interests are involved here. But once the witness testifies voluntarily, then the other parties have an interest, too, in getting that testimony fully cross-examined. But that interest can't trump the Fifth Amendment. I mean, that's where I think we all agree, right?  At the point where the witness voluntarily testifies, then the waiver rules can take those interests into account. I would agree that if the witness consistently takes the Fifth Amendment, the other party's rights to every man's evidence and the compulsory process and all of that doesn't trump the Fifth Amendment. But once the witness testifies, then he opens himself up for cross-examination and examination on the details of the matters upon which he's testified. That's what the Supreme Court held in Mitchell was still the general rule. And there's no language in Mitchell which suggests that it was backing away from that, except with regard to the very different situation which exists in plea colloquies, which the court explained why the different rule would apply in those circumstances. But we direct the court's attention to the United States v. Brown case, or Brown v. United States case. That's a 1958 case where the Supreme Court very clearly said that a witness who voluntarily takes the stand lays himself open to cross-examination as to matters relevant to that testimony. So as long as the desired examination by the parties has a reasonable basis for the testimony that was voluntarily given, then there is a waiver of that and the witness needs to answer the question. Yeah, but that was, she couldn't invoke on cross-examination the privilege, right? That's right. That's correct. That would be like testifying, that was your, Mr. Quigg's example of the affidavit, or just testifying on direct to your own attorney and then invoking on all the questions on cross. That's what that related to. That's different in time than here where arguably that first, everyone agrees the first event is over. Whatever the significance of that event is, is what we're trying to figure out. Well, courts that have looked at this, especially in the context of where the defendant is seeking a stay of a civil proceeding because of his fear of being involved in a Fifth Amendment problem, courts have pretty consistently rejected those stay motions where the witness has already given a deposition. That's what occurred in the Creative Consumer Concepts case from the Tenth Circuit that was cited and also the First Circuit in Microfinancial Inc. versus Premier Holladay's. In both of those cases, they said, well, the interest of the defendant in a stay is minimal here because they've already testified on deposition and thus have probably waived the privilege because it was in the same proceeding. Of course, the idea that it's exactly the same proceeding was specifically the holding of the Maryland Supreme Court in the Moser versus Hefferson case. Also important to this is the U.S. versus Parsons of Land case. It's another First Circuit case where the witness gave an affidavit and then tried to shield himself from deposition and the holding there was that he wasn't able to do that. He had to subject himself to examination with regard to what he said in his affidavit. So in a normal case, the witness, having injected themselves into the case by agreeing to testify, must accept the consequences of that testimony, and that includes cross-examination within the scope of that cross-examination. But here it is going to a second stage, let's put it. And so the fundamental question is should we, it seems like everyone agrees that if you testify at a deposition, you can't assert the Fifth Amendment vis-à-vis being cross-examined at that deposition. But why should this carry forward to the trial in the civil case? It should because the testimony itself can carry over to the trial in the civil case, as it has here. But why is that pertinent? The testimony, whatever they did, they did. The new testimony is what they're worried about jeopardizing them. Whatever they did, they did. But in doing it, they opened themselves up for examination on the same subjects. But they were examined at the deposition. They were thoroughly cross-examined. All the questions were asked. I mean, cross-examination was fulfilled, and that's the purpose of it. You just want to do it again is what you want to do. You want to do it again in trial. Well, absolutely, we want to do it again. Well, I know. And we have a right to do that. We'll decide whether you do or not. But what I was trying to get at is for you to explain your theory as to why this should continue in the trial phase of the civil case. Because the witness has provided testimony that is being used in the trial of the civil case. Therefore, he's subject to cross-examination. Now, whether the end of the deposition makes any difference to the party's right to continue that cross-examination, there's no authority that's been cited by any party here that says that the end of the deposition, you know, is what forecloses any further inquiry. And certainly, if the New Hampshire Supreme Court ruled that. Yes, they ruled that it was separate proceeding. But the court can look at its trail precedent and find that the cases that it cites doesn't. Okay, you just said there's no authority. There is. I mean, right? Right. You make the Maryland Court of Appeals decision that goes your way. The New Hampshire Supreme Court goes the other way. And we don't really have a clear law on this thing. And when we don't have it clear, I just wonder if the presumption ought to prevail, that's all. Well, there's no question that whatever presumptions exist. There's a presumption against the waiver of your Fifth Amendment rights. That's very clear. Supreme Court cases are cases. And the party that says that there is a waiver, I think, has the burden of persuasion. And Corovinto, our case from the Sixth Circuit, courts must indulge every reasonable presumption against the waiver of the Fifth Amendment privilege. Hoffman v. U.S., the Supreme Court says this provision of the Fifth Amendment must be afforded liberal construction in favor of the right it was intended to secure. I mean, although, if it's evenly balanced, I think the rule is that the Fifth Amendment should prevail. Well, it is argued that it's far from evenly balanced as far as the weight of authority goes. Far from clear to me that it's been waived here, that's for sure. Is there a difference between saying there's a presumption in favor of Fifth Amendment rights and saying that there's a presumption against waiver? In other words, the potential defendant has a presumed right against self-incrimination that's to be viewed liberally. But once that potential defendant, criminal defendant, agrees to testify, say, in a civil deposition, we don't have a presumption against waiver. We rather look at whether or not there has been a waiver. I think that it is two separate questions, Your Honor. And certainly, as to the first question, we don't have any rulings whatsoever by the district court, and there's no indication that the court is not fully cognizant of the liberality afforded to the Fifth Amendment privilege or wouldn't apply the proper rule as to any particular case. But as to the second point, once there is an injection by the witness, then the rights of others in the case become important, too. As the Second Circuit said in the certain real property case, because all parties are affected by the invocation of the Fifth Amendment and they all have the right to litigate a civil case fully, and because the exercise of Fifth Amendment rights should not be unreasonably costly, the court should seek out ways to permit as much testimony as is possible. Now, can I ask you, does it matter that they're not a party to this case? Because in the cases you cite in support on your side, they were a party to the case. Does that have any impact? In other words, they're not using it as a sword nor a shield. They're just trying to avoid incriminating themselves for an upcoming criminal trial, potentially. Certainly at the time that the deposition testimony was given, they were parties to the lawsuit. I'm not sure that's exactly the case with Baird, but as for all the others, it's certainly the case. But does that change things now, is my question. No, Your Honor. It would be our contention that it doesn't change things. These witnesses had at that time a sufficient motive to present their testimony in as self-serving a light as possible, consistent with their obligations to tell the truth. And since that time, the case has moved on and the case has developed. Other things have been learned by the parties, and it opens up new possible avenues for testimony related to their prior testimony at the deposition. And the defendants should not be limited to whatever cross-examination they got at the deposition. If this were any other civil party, or witness for that matter, they could not invoke their prior deposition as a reason to avoid the trial subpoena just because they don't want to show up at a subsequent trial. That's why it's necessary for them to come in and invoke the Fifth Amendment on a question-by-question basis, and then undoubtedly Judge Levy will give them all of the protections that the Fifth Amendment affords to them. So was your client at the deposition, was your client taking the role of doing cross-examination? Who was taking the deposition actually, who asked the initial questions in the deposition? Your Honor, I'm not sure who the noticing party was for each of those depositions, or even if it was the same party, because they were deposed over a period of several months. But certainly my client was represented at those depositions and did ask questions. Did ask questions. Yes. I see your red light is on. If you have a concluding sentence, that's fine. Otherwise, we will hear a rebuttal. No, Your Honor. Thank you. Thank you. Thank you. I'll just start with the last question you asked, Judge Moore, on who asked questions. And because of the consolidation and coordination of cases before the district court, every party had ample opportunity to ask questions at the depositions. In Governor Snyder's case, the parties were allowed to ask him questions for up to 16 hours. They didn't use all of that time. And, in fact, DNA's attorney actually left the deposition early, ended his examination early, so he could go play golf and put that on the record. So this idea that there was some limitation at the deposition is really just simply false. So I'll go from there to the beginning of the response, another instance of kind of revisionist history in the district court, and that's on this notion that the district court was intending to conduct a particularized inquiry, a question-by-question inquiry. Number one, that only really becomes relevant if the court disagrees with our position that a deposition and trial are separate testimonial events, so a waiver at the deposition doesn't carry over to trial. Because here, the district court recognized that if its analysis of the separate proceeding rule was wrong, that these witnesses would have an undoubted right to silence. The only issue was waiver. He recognized they could have a blanket invocation of privilege without going question-by-question. Well, on that ultimate question, I don't know that the district judge said that explicitly, but if you look at the court's order, which I admittedly don't have in front of me at the moment, we quote it in our brief, the court says, there is no doubt that the questions and issues at trial overlap completely with the pending criminal charges. So absent a waiver, these witnesses would be entitled to their right to silence. So on the question of what the plan was and what the parties were asking for in the district court, V&A and LAND were not asking the district court to conduct a particularized question-by-question inquiry. Rather, they invited the district court to conclude, as Mr. Witte just argued to the court, that by answering even just a question or two on a topic, did you appoint the emergency manager in Flint, that Governor Snyder opened the door to any questioning whatsoever on his use of the emergency management law. And the district court made clear at the second hearing on March 25th, that's ECF 752 is the transcript, that it was willing to accept that invitation, at least in part. The district court wanted to avoid what was obviously going to devolve into a circus. It didn't want to litigate these issues question-by-question in front of the jury. So it, too, wanted to make a subject matter determination. And it said, well, how about if I limit that proposed topic, use of the emergency manager law generally, to use of that law in Flint, and they can ask any questions they want about that. So that's not, it's just simply revisionist history to suggest that the path we were going in the district court was a question-by-question inquiry, and we just simply refused to show up. But the five individuals could be called, even if they invoked their Fifth Amendment privilege, they could be called and asked basic information, right, like what their name is and what their position was. Are you saying that it is truly a blanket? Well, I think they could be called and asked what their name is. But even questions like, what was your position? One of the elements of Governor Snyder's charges, for instance, is that he's a public official. So particularly given the appellee's position here, that any answer opens the door on a subject matter. He can't even answer that he was the governor of the state of Michigan. Otherwise, there will be some form of waiver. So moving to another point, unless the court has further questions on that. This notion that other courts have considered this question and ruled adversely to us. I would just simply point the court to our reply brief, pages 12 through 14 in the ECF pagination, and note that all of the cases that the appellees are relying on either have no reasoning or are easily distinguishable and involve inapposite facts. Specifically, credit consumer concepts and microfinancial. It's one thing for a court to say when confronted with a motion to stay on the basis of the privilege against self-incrimination, to say, why are we staying this case? You already have a deposition transcript where you've admitted this stuff. That deposition transcript could be admitted against you at trial, so there's no reason for a stay. We agree with that. Our position is the court should have, as it indeed did ultimately here, order the playing of the deposition videos. So those cases have nothing to do with the question before the court. So to the First Circuit's decision in parcels of land, where a party submitted a one-sided affidavit and refused to answer any questions about it. That's a fundamentally different situation, as you pointed out, Judge Lepar. Next, there was some suggestion that the witness create some sort of a reliance interest or something like that once he is willing to sit for a deposition, so the parties can rely on his presence at trial. That really just doesn't make much sense to me, particularly in the context of a case like this, where litigation can be anticipated to go on for years, maybe even decades. There could be many trials. These witnesses could be dead. Governor Snyder, he's not an old man, but he's not a young man. He's not a spring chicken. So there are no guarantees ever that a witness will appear at trial, Fifth Amendment or not. So how does that cut? We all know that witnesses die. They can be hit by a car. Right. I think it undercuts the notion that once a witness testifies at a deposition, that there's some sort of a reliance interest on the part of the parties for his appearance at trial. Things happen. Witnesses move. It may not be possible to compel their attendance at trial. They die. There might be new developments. They're indicted, giving them new grounds for apprehension about their Fifth Amendment rights. And in any event, the FLE's purported reliance interest can't override the criminal defendant's, the government official's, Fifth Amendment rights. Next, on the notion of a subject matter waiver, there is a distinction, I think, in the case law between the Brown situation, where a party gets up on direct, waives her privilege to make her case, and then refuses all cross-examination, and a case like Rogers or LaRouche, where the Supreme Court and this court recognize that answering a witness, not a party, a witness answering a question or two on a topic doesn't affect a subject matter waiver. So in LaRouche, for instance, the witness, the government star witness, testified on direct that he had committed a number of crimes and hadn't revealed all of them to the government. And on cross, the other side obviously wanted to ask him, what are the crimes? Under a rule of subject matter waiver, those questions obviously could be asked. Nonetheless, this court said no. Even when a witness has answered a question or two on a topic, the court still has an obligation to evaluate whether each additional question on that topic poses a risk of further incrimination. Judge Moore, on your question about the presumptions here, presumption in favor of the Fifth Amendment and a presumption against waiver, I think perhaps one could draw a distinction there, but I think the important takeaway for the court is that the cases don't hold that there's a presumption or don't simply hold that there's a presumption in favor of a witness' Fifth Amendment rights. They also hold, as the court said in Convertino, the Supreme Court said in EMSPAC and other cases as well, that courts must indulge every reasonable presumption against waiver. So we're in that latter bucket.  Let me just summarize by saying this. Fundamentally, this comes down to can you decide questions of waiver based on wooden, formalistic rules, or do you have to determine those questions based on the policies and purposes behind the Fifth Amendment and the waiver rule itself? We think the answer is quite clear, both on the law and the facts in this case, but the answer is wooden, formalistic rules don't govern, and these witnesses should be allowed to invoke their Fifth Amendment rights anew at this trial and each successive trial. Can we get back to the issue of mootness, which obviously has come up from the panel? I think the question was, although this issue is capable of repetition since we've got the other trials coming up, it will not evade judicial review because there can be an appeal of the subpoena in the next case, and therefore that exception to mootness doesn't apply. Can you address that? Sure. I'm happy to address that, Judge Griffin. I think we face a practical reality that this issue will recur, and I think Counsel for V&A and I agree on this. This issue will recur and will be in fundamentally the same place that we're in today. Is there a prudential exception to the Constitution that we can ignore Article III because of practical realities? There is no prudential exception, Judge Tappar, but to your point that there could have been a stay, that was, I suppose, a theoretical possibility that would have been, I think, on V&A. Well, we would know if the district judge had denied a stay, but there was no even request as far as I'm aware. There was not a request, and I was looking as I was sitting at the table to find the district court statements. At the end of the day, it's not an order, to your point, but I do think the district court, when there was discussion about how to approach appealing her ruling, she acknowledged that it would not make sense to delay the trial, given the circumstances of this case. This trial had been going on since February, I want to say, 24th, and the parties just closed last week, so delaying the trial for the weeks or months it would take for the appeal to be decided, and this appeal got before the court very, very quickly, and it's still taken a few months to get to oral argument, and I certainly don't expect... Didn't you oppose expedition of this so it would be decided? No, Judge Tappar, that's not accurate. What we opposed was dispensing with oral argument. All right. That's a different way of saying it. Yes, there was accelerated briefing, and it was placed on the first available appellate docket. Yes, we moved to expedite. I mean, I can just walk you through the facts. I was the person doing the briefing. We filed a petition before this court five days after the court certification order, and I think we briefed the case on the merits. That's all we could do in our court, and we still were unable to render a decision before the trial was... The matter was submitted to the jury, so it has evaded judicial review. I mean, not according to every circuit in the country that's looked at. Okay. I will have to take a look at our text. We could be the first panel here. Unless the court has any further questions. Thank you. We have one more rebuttal. No, maybe two. Quick rebuttals. In fact, I'm going to yield my time back to the court. I do believe that Mr. Quigg addressed every issue so much. Thank you. You have any questions? Thank you. Mr. Swar? Your Honor, hopefully very briefly. V&A pointed out that they claim they have no control over the prosecution in this case. But, in fact, when Mr. Ambrose testified at his deposition, the questions asked him at his deposition had nothing to do with the previous trial or the previous charges. V&A took its grievance to the prosecution, and this prosecution in which we currently are facing is right at the feet of V&A. It duplicates V&A's complaints here. V&A took its theory to the investigating prosecutors. Those became, as a matter of fact, V&A can see. You're not arguing that they're an agent of the government. No, I'm not arguing they're an agent of the government. But, certainly, they brought this issue to say we're not involved in the prosecution, when, in fact, the prosecution here is of a pair with V&A's theory here. It is disingenuous. There was no way for Mr. Ambrose to anticipate this, these charges, and that's why Morgan Roth's point about changed circumstances really hits home here. Thank you. Thank you. Good afternoon. Getting close to afternoon again, Your Honor. Very briefly, the appellees have tried to draw a distinction without a difference as to Mr. Croft, especially as well as Mr. Ambrose and Earley, referencing the motion that was filed in 2019 in the district court. In fact, what happened with that motion, part of that was a request to stay the depositions until after the statute of limitations on the false pretenses charges had run, and that would have been in April of 2020. Mr. Croft was the first opposed of the three in May of 2020, and then again in September of 2020 for his third day of deposition. So the distinctions that the appellees are trying to draw between these three, they really are distinctions without a difference, because at the end of the day, at the time when all of the appellants were subpoenaed for trial, they had become non-parties to these cases, and we know that under Convertino that non-parties can pick the point of no return, essentially when it comes to asserting their Fifth Amendment rights. And Judge Griffin, I think that you astutely were asking questions about liberally construing these Fifth Amendment rights, especially when we have a lack of jurisprudence in this area on points, and that's how the Fifth Amendment should be construed here. All the appellants acted in ways that accord with the policies that support the waiver rule. They didn't try to stop their depositions in the middle and became uncomfortable for them. Mr. Cross testified for three days, and in fact the appellees could have gone back to Judge Levy and asked for additional time if they wanted to. There was no follow-up after these. So I ask that the court reverse the order of the district court, and I'll adopt all of the reasoning and rationale that's been put on by my brother and sister counsel here today. Thank you. Thank you. Thank you all in this complicated case, and the case will be submitted.